Filed 5/21/13  P. v. Kassem CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C067909 |
| v. | (Super. Ct. No. SF116280A) |
| HASSON KASSEM, | |
| Defendant and Appellant. | |

A jury convicted defendant Hasson Kassem of arson of an inhabited structure, but acquitted him of attempted murder.  The trial court sentenced him to three years in state prison.  Defendant contends the trial court abused its discretion when it denied his request for an Evidence Code section 402 hearing concerning the admissibility of a witness's statements to a police officer.[1]  We conclude the trial court correctly determined that

---

[1] Undesignated statutory references are to the Evidence Code.

1

defendant's concern regarding the witness's limited ability to speak English goes to the weight to be accorded the evidence, not its admissibility. We will affirm the judgment.

BACKGROUND

Nageb Ali Abuzaid owned the El Amigo Market in Stockton, and lived in one of the apartments above the store. Defendant had lived in another apartment above the market and worked for Abuzaid from August 2009 until June 2010.

Around 2:00 a.m. on November 9, 2010, Stockton Police Officer Walt Vancil observed the market on fire. The flames appeared to be coming from the door and, on closer inspection, Vancil observed a pile of charred or burnt paper material in the lower right portion of the doorway. As Vancil approached the market, defendant and Abuzaid were standing a few feet apart near the front door. Abuzaid seemed "pretty angry" and was yelling at defendant.

Vancil instructed the men to go to the park across the street. As Vancil and the men walked away from the building, Abuzaid said that "[defendant] fucking burnt my store down." Vancil noticed "an ashy particulate matter" that looked like "burnt paper" on defendant's head, clothing and shoulders, and his hands were black with soot and ash. Abuzaid did not have any "ashy matter" on his body or black soot on his hands. Vancil detained defendant to investigate whether he was involved with the fire. He searched him and found a total of four lighters in three different pockets. Vancil placed defendant in his patrol car.

Thereafter, Vancil took Abuzaid's statement. Abuzaid, who emigrated from Yemen in 1996, spoke in English with an Arabic accent. Vancil had no problem understanding Abuzaid because he was familiar with the accent from his experience in the Persian Gulf. Abuzaid said he had known defendant for a number of years. Defendant had been his employee and used to live in one of the apartments above the market, but Abuzaid kicked him out about six months earlier. Defendant had returned several times since then to argue about being evicted and about a sum of money he

2

claimed Abuzaid owed him. Around 1:30 a.m. that morning, defendant yelled up to Abuzaid to open the store so he could go upstairs and go to bed. Abuzaid told him to come back later when the market was open, and then went back to bed. Shortly thereafter, he woke up when he smelled smoke. Abuzaid looked out of the window and saw defendant standing next to his car. Abuzaid went downstairs to confront him and to call 911. Defendant spoke to the operator and then Abuzaid did, exclaiming, "[H]e's a terrorist. That guy, he fired my store."

After taking Abuzaid's statement, Vancil returned to his patrol car to speak to defendant. When Vancil opened the door, defendant got out of the car and said, "I did it, I started the fire, I'm guilty. He kicked me out, I set the fire, I set the fire." Defendant said he was angry with Abuzaid for kicking him out of the apartment and for not paying him between $12,000 and $20,000 that he believed Abuzaid owed him. Defendant also said, "I am guilty for setting the fire. That bastard told me to go live on the--to go fucking live on the street. I am guilty, but I am not a bad man." Defendant said "he wanted to pay Mr. Abuzaid back." He explained he took paper trash out of a nearby trash can and used one of his lighters to ignite the fire.

Stockton Fire Department Captain Tim Enright investigated the fire and determined that it was deliberately set by igniting ordinary combustibles by the door.

Defendant testified at trial. He said he emigrated from Yemen in 1990 and speaks sufficient English to communicate at work. He denied starting the fire and said that the market was already burning when he arrived. Defendant started banging on the wall underneath Abuzaid's window. The two men threw water on the fire, and ashes fell on them. Defendant claimed Vancil asked them "who stopped the fire," and he told Vancil that he had stopped the fire, not that he started the fire.

At trial, Abuzaid confirmed that defendant awakened him by banging on the building, shouting "fire," and telling him to get out. Abuzaid denied many of the statements Vancil attributed to him. He said he told Vancil that defendant worked with

3

him, just not at that time, and that everything was "fine" between the two of them. When Vancil asked who started the fire, Abuzaid testified he said, "I don't know, but [defendant] is outside . . . you can go and ask him. [¶]. . . [¶] Ask [defendant] what he saw and he can tell you everything in detail." Initially he conceded telling Vancil that defendant "fucking burnt my store down," but claimed he could not think at the time because he was distracted by the fire. Thereafter he claimed he could not remember making the statement to Vancil. Abuzaid denied telling Vancil that defendant caused him problems, that he was upset with defendant, that he evicted him, or that he was having an argument with him.

## DISCUSSION

Defendant contends the trial court abused its discretion in denying his request for a section 402 hearing regarding the admissibility of Abuzaid's statements to Vancil at the scene of the fire.

Section 402 is a procedure for the trial court to determine, outside of the jury's presence, whether there is sufficient evidence to sustain a finding of preliminary fact upon which the admission of other evidence depends.[2] The trial court has broad discretion in determining the admissibility of evidence, and it is within the trial court's discretion whether or not to decide admissibility questions under section 402, subdivision (b) within the jury's presence. (*People v. Williams* (1997) 16 Cal.4th 153, 196.) "On appeal, a trial court's decision to admit or not admit evidence, whether made *in limine* or

---

**2** Section 402 provides in relevant part: "(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article. [¶] (b) The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; but in a criminal action, the court shall hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests." (§ 402, subds. (a) & (b).)

4

following a hearing pursuant to . . . section 402, is reviewed only for abuse of discretion." (*Id*. at p. 197.)

Defendant argued in the trial court that the statements were unreliable because "Abuzaid doesn't speak enough English to properly communicate with Officer Vancil." The prosecution responded that a section 402 hearing was not warranted because whether Vancil understood Abuzaid's statements correctly concerned the weight of the evidence, as opposed to its admissibility.

The trial court noted that Abuzaid would be testifying through an interpreter because he felt more comfortable doing so, but observed that "we've had so many examples here, undoubtedly he speaks English to some degree, . . . he isn't carrying on a grocery store business in south Stockton in this day and age without speaking some English, so it would be stupid to suggest otherwise, so undoubtedly he speaks some English, and if he is going to testify here, however, through an interpreter, . . . his statement here is going to be under oath, and it's ordinary testimony. [¶] So now what the D.A. wants to get in . . . is going to be his prior inconsistent statements, . . . there are always issues as to whether or not the hearer got it right, whether that was what was really meant, whether it's trustworthy or not, which statement is to be believed . . . ." The trial court noted further that Vancil spoke English with Abuzaid, because Vancil, despite his experience in the Gulf War, did not speak much Arabic or Farsi. "So the real question would be, I suppose, whether somehow Abuzaid was able to speak English or not. . . . [I] just don't think that this qualifies as the ordinary type of 402 foundational type hearing that would be necessary to get in a prior inconsistent statement, . . . , I agree, it's a matter that goes to the weight rather than the admissibility of Mr. Abuzaid's statements, so I'm going to deny your request . . . ."

The trial court did not abuse its discretion in determining that defendant did not present a viable preliminary fact that could be decided as a matter of law. Defendant posits that a section 402 inquiry should have been made into whether Abuzaid could

5

speak and understand English because Vancil may have "had a motive to mislead or distort" Abuzaid's statements in order to solve the crime immediately. But it is also possible that Abuzaid, who recanted his incriminating pretrial statements to Vancil, had a motive to minimize or distort the extent of his English language skills in order to cast doubt upon the legitimacy of his prior statements. Thus, whether Abuzaid's English language skills were so poor that Vancil could not have understood him was a factual matter for the jury relating to the witnesses' credibility. It is the exclusive province of the trier of fact to decide upon the credibility of a witness, and the truth or falsity of facts upon which a determination depends. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Defendant had ample opportunity to cross-examine Abuzaid regarding his language skills, as well as to cross-examine Vancil regarding whether he heard Abuzaid correctly. Abuzaid spoke at least enough English to conduct his business in Stockton, and Vancil claimed to easily understand Abuzaid's accented English due to Vancil's time in the Middle East. Whether Abuzaid made the inconsistent pretrial statements, and whether Vancil heard them correctly, was for the jury to decide as part of its function in determining whether Abuzaid's trial testimony was more reliable than his pretrial statements. The jury had Abuzaid before it and could observe his demeanor and the nature of his testimony as he denied or tried to explain away the inconsistencies between his statements. The jury was in as good a position to determine the truth or falsity of the prior statements as it was to determine the truth or falsity of the inconsistent testimony in court. (*People v. Ochoa* (2001) 26 Cal.4th 398, 445-446, abrogated on another point as stated in *People v. Prieto* (2003) 30 Cal.4th 226, 263, fn. 14.)

Defendant fails to establish that the trial court abused its discretion in denying his request for a section 402 hearing concerning the extent of Abuzaid's ability to speak English.

## DISPOSITION

The judgment is affirmed.


                                                                      MAURO        , J.


We concur:


        RAYE        , P. J.


        BLEASE        , J.